UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LOQUITA VALLERY** | * | **CIVIL ACTION** |
| | * | **NUMBER: 19-13219 (4)** |
| v. | * | **MAG. JUDGE: ROBY** |
| **LOUIS DEJOY, POSTMASTER GENERAL of the UNITED STATES POSTAL SERVICE** | * | |
| | * | |

\* \* \*

**ORDER AND REASONS**

Before the Court is the Defendant's, Louis DeJoy, Postmaster General of the United States Postal Service, **Motion for Summary Judgment**. Rec. Doc. 23. The motion is opposed. Rec. Doc. 27. The USPS filed a reply in support of the Motion for Summary Judgment. Rec. Doc. 30. Vallery filed a Sur-Reply Memorandum in Opposition to the Motion for Summary Judgment. Rec. Doc. 34. The matter is before the court upon the consent of the parties. Rec. Doc. 15.

**I.     Facts and Procedural History**

    **A.   The Complaint**

Plaintiff, Loquita Vallery ("Vallery"), a black female, and the former Postmaster of the Denham Springs Post Office[1] filed this lawsuit against Louis DeJoy, Postmaster General of the United States Postal Service ("USPS"), contending that she was discriminated against when she

---

[1] Notably, Vallery alleges just after her promotion to Postmaster of Denham Springs her immediate supervisor, Nicholas Piazza was questioned by Keith Accardo regarding why Vallery was promoted over a white female. Rec. Doc. 1, at ¶ 9.

1

was denied a lateral move to Manager of Post Office Operations ("MPOO").[2]  While a MPOO manages all operations of a designated group of post offices within the jurisdiction, it is classified with the same job rating as the Postmaster position, EAS-22.

On August 1, 2017 a MPOO position became available and was open for application through August 16, 2017. Rec. Doc. 23-5.  The job posting indicates that the selecting official was Stephen Hardin ("Hardin"), a white male.  Vallery applied on August 16, 2017 and Todd Melancon ("Melancon") applied on August 15, 2017.  *See* Rec. Doc. 23-7.  James Tate ("Tate"), a black male, however conducted the interview rather than Stephen Hardin.  Tate reported directly to Hardin.

Vallery applied along with three other white males[3]; Melancon, was one of the applicants.  According to Vallery, Melancon was a level twenty (20) manager and Postmaster who had been detailed to a MPOO Area 4 position on December 31, 2016, some eight months in advance of the vacancy being noticed, and ultimately was hired to fill the position permanently.  *See* Rec. Doc. 27-13., Exhibit B, Non-Competitive Reassignment Process.

According to Vallery, Tate pre-selected Melancon when he circumvented the application process by failing to score the applications and interviews, and by not completing the matrix as an official record of the decision-making process.  Additionally, as part of the pre-selection process, Tate relied upon Melancon's prearranged experience in a MPOO position, which was arranged by Hardin, even though he was not eligible for the competitive placement at the same level.[4] *Id*.

---

[2] R. Doc. 1 at ¶ 10.
[3] *See* Rec. Doc. 23-6.
[4] *See* 5 USC §2302(b)(6) which prohibits the grant of any preference or advantage not authorized by law, rule or regulation to any employee or application for the purpose of improving or injuring the prospects of any particular person for employment.

According to Vallery, Melancon had no prior permanent experience at a Level 22 position before Hardin selected him over her for the position. *See* Rec. Doc. 27 and Exhibit 15.

### B. The Administrative Process

Plaintiff initiated the Equal Employment Opportunity ("EEO") process on December 11, 2017, by filling a complaint alleging race and sex discrimination. Rec. Doc. 23-1, p. 2. She challenged the hiring decision and also sought compensatory damages and attorney's fees. On January 4, 2018, the USPS accepted Plaintiff's EEO Administrative Complaint for her non-selection for the MPOO Area 4 position on account of alleged race and sex discrimination. *Id.* The USPS completed its Investigative Report on March 1, 2018. *Id.*

Vallery complains that the reason given for promoting Melancon was that he had actual MPOO experience. Rec. Doc 27, p. 3. Melancon got this experience when he was detailed to the position for more than 180 days in advance of the jobs posting. *Id*. at p. 4. Vallery complains that she was not afforded the opportunity to be detailed in a MPOO position.

In the EEO Investigative Affidavit, Tate advanced the following reasons for his decision:

> All 4 candidates had many years of management experience with the USPS but only Mr. Melancon **had actual experience in an MPOO position**-he was detailed to the MPOO-4 position at the time of his application. In his interview he showed substantial technical expertise as well as **relevant skills and experience** for the job and importantly, showed me that he would be able to work **harmoniously** with a broad range of people which is crucial to an MPOO's success. *See* Rec. Doc. 23-6, ¶ 17.

Tate further wrote:

> Ms. Vallery did not have MPOO experience **despite her good management background** and did **not showcase her talents** particularly well in her interview. That was true even in her responses to some fairly simple questions in which **she was not able to show a strong command of basic management skills.** It's not simply a numbers game but I note too that Mr. Turchirelli had the most management experience of the group-about 21 years, and had some impressive accomplishments including creating a program that was adopted by one of our VP's but his experience was more so in what we call "function 4" so even all of his management experience did not outweigh **Mr. Melancon's experience and expertise**. See Rec. doc. 23-6, ¶18.

3

Tate wrote the following regarding Vallery's qualifications compared to Melancon:

> Vallery's application packet and interview shows **inconsistency** between communicated strategies and her actual performance data. Ms. Vallery's actual performance displayed a **lack of stewardship** over current resources, a **weak performance** record, a **poor record of safety performance** and **weak communication skills**. In the interview, Ms. Vallery **did not showcase the leadership** and/or communication capabilities I believe are necessary to effectively lead the MPOO2 area. The selectee, Todd Melancon's application packet and interview demonstrated **technical competency,** the ability to work in **harmony with others**, and the relevant **skills and experiences** through his performs as Postmaster and Acting MPOO. In the interview, Mr. Melancon **communicate his capabilities** in a compelling manner and his demonstrated performance suggests high potential for success as an MPOO.

Plaintiff requested a hearing before an Administrative Judge, which was held on June 20, 2019. *See* Exhibit 10, Excerpts from Plaintiff's EEO hearing. On July 23, 2019, the Administrative Judge issued a decision finding that Plaintiff had not proven her claims of gender-based or race-based discrimination and, on July 25, 2019, the USPS issued a Notice of Final Action that implemented the Administrative Judge's decision. *See* Exhibit 11, Notice of Final Action. Plaintiff initiated this lawsuit by filing her Complaint on October 22, 2019. Rec. Doc. 1.

The USPS now seeks a dismissal of Vallery's complaint because: (1) it had a legitimate non-discriminatory reason for selecting Melancon, and (2) Vallery cannot produce evidence or demonstrate that the reasons were pretextual. Therefore, the USPS contends that her claims of racial and gender based discrimination should be dismissed.

Vallery contends that this is a hybrid case, blending two systematically discriminated against groups; women and blacks. Therefore, Vallery contends that she was systematically barred from lateral and upward movement because she is a black woman. Vallery contends that she requested that Hardin authorize her to laterally move to an MPOO EAS-22 position on other occasions and in each instance he non-competitively filled the position with a white man. Rec. Doc. 27. He further failed to follow through on his promise to detail her to a MPOO assignment

as he had done for Melancon.  *Id.*  Vallery further contends that the USPS's proffered reasons for her non-selection are untrue and pretextual.

## II.      **Standard of Review**

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); see also *Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).  "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.,* 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. *Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *Adams v. Travelers Indem. Co*., 465 F.3d 156, 163 (5th Cir. 2006).   The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994).

To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; Rodriguez, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014)(internal citation omitted). To be entitled to summary judgment on its own cause of action, a plaintiff must show there is no genuine dispute of material fact and establish each element of its cause of action as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2 1190, 1194 (5th Cir. 1986).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586-87; see also Fed. R. Civ. P. 56(c). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); see also *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998)(citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music, Inc. v. Bentley*, Civil Action No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)(citations omitted).

### III. Analysis

The USPS concedes that Vallery can satisfy the prima facie elements of the claim. However, they further contend that upon the burden shifting, USPS has evidence that Tate denied that race or gender were factors in him selecting Melancon over Vallery and that he has selected many black females for promotion. *See* Rec. Doc. 23-1.  The USPS contends that even if its decision was erroneous or arbitrary, unless Vallery can present evidence that discrimination was a motiving factor in the decision, her claims should be dismissed.

USPS contends that Tate offered multiple legitimate, non-discriminatory reasons for selecting Melancon instead of Vallery, namely: (1) a poor record of safety performance, (2) employees wearing improper footwear, (3) employees improperly using time cards, (4) her weak communications, and (5) Melancon's superior communication skills. *Id*. Therefore, the USPS contends that its summary judgment should be granted.

Vallery contends that Hardin went to great lengths to shield his discrimination by: (1) using Tate, a black man to conduct the interview, (2) ignoring policy by not using the PS Form 5957 which requires a record of the knowledge, skills, and abilities that were being evaluated, (3) by pre-selecting Melancon and giving him an unfair advantage by detailing him in the position which

he ultimately was "uniquely qualified" for as determined by Tate, and (4) by evaluating her on current performance in the postmaster position but evaluating Melancon performance in the MPOO position rather than his postmaster position which was his permanent detail.

Vallery contends that Hardin and Tate knew that the post office she managed had been impacted by a flood in August 2016 and that as a result the office experienced staffing challenges because employees had to take care of their homes. Rec. Doc. 27. Melancon had no such challenges. *Id.* Vallery further contends that Tate's reasons for not selecting her were pretextual because he negatively evaluated her for allowing an employee to wear open toe boots even though she was ordered to do so by her direct supervisor MPOO-2 Joseph Porsche. *Id*.

Claims of racial and gender discrimination based only on circumstantial evidence are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805 (1973). Under this three-part scheme, a plaintiff must first establish a prima facie case of discrimination by showing: (1) he belongs to a protected group; (2) he was qualified for the position sought; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, (1993).

If a plaintiff is successful in establishing his prima facie case, a presumption of discrimination arises. *McDonnell Douglas*, 411 U.S. at 802. In the second step of the analysis, the burden shifts to the defendant to produce a legitimate, nondiscriminatory justification for its actions. *Id.* The defendant's burden during this second step is satisfied by producing evidence, which, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Hicks*, 509 U.S. at 509. (emphasis in original).

While the Defendant does not dispute evidence of a prima facie case, the Court finds that it is important to understand how the claim developed. Central to the evidence in this case is

Stephen Hardin, a white male District Manager, who had the authority to promote Postmasters to the MPOO position and whose presence in the case is akin to the puppet master. Hardin issued the notice that the position was available, he placed Melancon in the position even though he was an EAS-20 not an EAS-22, the level of the actual position. Moreover, Melancon permanent placement in this position is seemingly in violation of the postal services policy which provides that a person working on detail in a higher-level position longer than 120 calendar days is not eligible for permeant placement in that position.[5]

Hardin was also the direct supervisor of Tate, the black man who conducted the interview and who ostensibly violated department policy which required the selecting official to complete a matrix.[6] *See* Rec. Doc. 27-12, Deposition of Treva Sanders. Melancon's experience in the MPOO EAS-22 position was one of the reasons offered by Tate for choosing him for the position. In contrast, Tate referenced Vallery's years of management experience and good management background, even though he did not select her for the position.

In its reply, the USPS contradicts the HR official's testimony and presented the affidavit of Celestine Jackson ("Jackson"), the Manager of Workforce Planning & Complement for the Louisiana's District office who said that no matrix completion was required. Rec. Doc. 30-3, p. 2. Given that one policy[7] indicates that a matrix was required and Jackson, relying on a different policy, says that Tate was not required to complete the matrix, if Tate ignored the hiring policy to accomplish the hiring objective as suggested by Vallery, a jury could find that his neutral explanations were pretextual in nature.

---

[5] https://about.usps.com/handbooks/el312/el312c7_020.htm Rule 743.15
[6] https://about.usps.com/handbooks/el312/el312c7_020.htm Rule 743.442
[7] *Id.*

Vallery also contends that the concurring official Keith Accardo ("Arccado"), a white male, had previously expressed animus towards the promotion of a black woman over a white person. Accardo, also chosen by Hardin, was detailed in the District Manager position. He also concurred in the selection of Melancon, a white male, after denying any role in the final decision during the administrative phase of the complaint. *Id*.

Hardin at the inception of the application process ignored post office policy by not replying to Vallery's email request for non-competitive placement. For example, the MPOO Area 4 position became available when another postmaster was promoted, a notice of vacancy was posted on August 1, 2017 and on August 16, 2017, Vallery emailed Harden requesting a non-competitive lateral transfer. *See* Rec. Doc. 27-4. While the policy required Hardin to respond to her request, he did not. *See Id*. Instead, Hardin placed, Melancon, a white male postmaster in the position as a detail where he worked for eight months before being selected for the permanent position; the decision about which Vallery complains.

The evidence of record shows further Vallery had previously requested a lateral transfer to a different MPOO position on June 7, 2017. Notably in both instance Hardin was located in Jacksonville, Florida. On this occasion Hardin read the message the next day at 6:04 a. m. and waited five days to reply to the message asking Vallery to call him. *See* Rec. Doc. 27-2, and 27-3. According to Vallery, during the call Hardin advised her that he had already decided to place someone else in the position. The person detailed in the position was a white male, Larry Darsam. *See* Rec. Doc. 27-1. Darsam was ultimately placed in the position permanently.

USPS contends in its reply that detailing Darsam to a MPOO position did not render his previous position vacant, even though he was working in another MPOO position. Rec. Doc. 30. USPS tortured explanation of vacant seems to suggest that if a person is detailed out of a position,

that the position is not vacant until that person is hired for a different permanent position. While Jackson offers this interpretation in her affidavit, her opinion is contradicted by the USPS' policy handbook. The handbook provides:

> **716.143 Higher Level Assignments Limited to 90 Calendar Days Unless Extended**
> Temporary assignment to a **higher-level position,** during the **absence of the incumbent**, is limited to a maximum period of 90 calendar days. The period may be extended with advance approval of the next higher level of management above the detailed position.
>
> **716.144 120-Day Time Limit**
> Temporary assignment to a **higher-level vacant position**, pending selection of a person for permanent placement, is limited to a total of not more than 120 calendar days. If the employee on temporary assignment could become or is a potential candidate for the vacant position, the higher-grade assignment must be terminated before the 121st day.
> https://about.usps.com/handbooks/el312.pdf

According the USPS' handbook, a vacant position is one where the previous employee has separated or **has been placed in another job**. *See* Rule 743.15. Notably the policy does not distinguish between being <u>detailed</u> or <u>permanently</u> placed. Therefore, Darsam had been placed in another job well before the time when the position "became vacant" by the USPS' interpretation.

According to the policy, when Darsam was placed in another job, the position became vacant, which is supported by Melancon's own application where he indicates he was working in Darsam's former position since December 2016. *See* Rec. Doc. 23-7. Noncompliance with policy may suggest that Tate's explanation was pretextual for gender and race discrimination. In this instance, the USPS' explanation is false and unworthy of credence and taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of Defendant's true motive. *Laxton v. Gap Inc.,* 333 F.3d 572 (5th Cir. 2003).

Turning to Tate's reasons for selecting Melancon. Tate offered multiple reasons for selecting Melancon instead of Vallery. Tate explained that Plaintiff's "actual performance displayed … a poor record of safety performance…." During his hearing testimony, Tate

explained his concerns with Plaintiff's safety record and described how the Denham Springs Post Office had issues with employees wearing proper footwear. Tate noted that despite putting a focus on this specific issue, Vallery had not sufficiently addressed the problem in her role as Postmaster.

Second, Tate noted that Plaintiff displayed "weak communication skills." During the EEO testimony, Tate expounded on this, explaining that some carriers at the Denham Springs Post Office were not properly using their time cards and he felt like Plaintiff had not done an adequate job communicating to her employees how to fix the problem. Rec. Doc. 23-10 at 86:13-87-7. It is unclear what this conclusion was based upon.

Third, Tate explained that Melancon had spent time detailed to this MPOO position and that, his successful experience was helpful. R. Doc. 23-5 at ¶¶ 17, 19. Finally, Tate explained that during the interview, Plaintiff "did not showcase the leadership and/or communication capabilities I believe are necessary to effectively lead the MPOO area" while Melancon "communicated his capabilities in a compelling manner." The reasons stated for Melancon being given the MPOO positions were, on the surface at least, non-gender or race related.

On summary judgment, after the presentation of evidence that the hiring decision was legitimate, the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision. *See Rubinstein v. Adm'rs. of the Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000), cert. denied, 532 U.S. 937, (2001); *Evans v. City of Houston*, 246 F.3d 344, 351 (5th Cir. 2001) (defining relevant inquiry as whether the plaintiff has presented evidence that the "justification was a pretext" for racial discrimination). In *Hicks*, the Court stated that, because the factfinder's disbelief of the reasons put forward by the defendant, together with the elements of the prima facie case, may suffice to show intentional discrimination,

rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination. 509 U.S. 502

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it can be quite persuasive. *See Id*. at 517. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. See, e.g., *Wright v. West,* 505 U.S. 277, 296, (1992).

The Court finds that there is evidence that Tate's reasons were pretextual. First, in his explanation he made specific reference to Vallery's performance issues and made no mention of Melancon's performance or if he had any issues either as postmaster or MPOO4. He contradicted his own reasons when he said the Vallery has good management background but that she failed to show a command of basic management skills. He makes no reference to Melancon's management skills at all.

Tate further found that Vallery had weak communication skills and Melancon had strong communication skills. He relied upon Melancon's experience in the actual position rather than his permanent position as a postmaster like Vallery. He generally referred to Melancon's "technical competency" providing no example but cited to examples of Vallery's lack of "technical competency". See A*ppelbaum v. Milwaukee Metropolitan Sewerage District*, 340 F.3d 573, 579 (7th Cir. 2003) (holding that pretext can be reasonably inferred from an employer's shifting or inconsistent explanations for the challenged employment decision).

Tate ultimately selected Melancon partially because he was working in the MPOO position for which Vallery alleges he was pre-selected by Hardin in violation of USPS policy. If Melancon was not improperly elevated to the detailed position, he would not have had more experience than

Vallery. The evidence shows that Hardin previously used the pre-selection process as a means to give unique experience to a white male postmaster. Therefore, a jury may conclude that the proffered reason is pretextual and that race and gender were a but-for cause of the decision to preselect Melancon. See *Hiner v. McHugh*, 546 F. App'x 401, 407 (5th Cir. 2013) (the court held that preselection may establish a pretext where the preselection was motivated by discriminatory animus)

Tate also relied upon the fact that she allowed one employee to wear open toe boots in violation of policy. However, Vallery contends that she was following an order from her supervisor by allowing the footwear. *See Haire v. Board of Sup'rs of Lousisna State University Agricultural and Mechanical College,* 719 F.3d 356 (5th Cir. 2013) (summary judgment denied where proffered reason for not promoting employee to position based upon the violation of policy was pretext for gender discrimination in light of employees claim that she was following a lawful order from her supervisor). This could also lead a jury to conclude that the proffered reasons for Vallery not being selected for the MPOO position were pretextual.

The Court further finds that a jury may conclude that Tate's word choice alone in evaluating the applicants was motivated by gender and race and was an after the fact attempt to manufacture non-discriminatory reasons. For example, Vallery, a woman was deemed a weak communicator and Melancon, a male, as deemed a compelling communicator by Tate. *See Vance v. Union Planters Corp.,* 209 F.3d 438 (5th Cir. 2000) (where the Court held that a jury could reasonably infer that this preference for a "a mature man" at the bank colored his decision to hire a man instead of the plaintiff).

Notably the only reason Tate assigned to Vallery's lack of communication was the fact that some of the employees had timecard issues. Tate concluded that the conduct of the employees

regarding the timecard must have been due to something she failed to say properly. But he failed to identify any specific communication that he thought Vallery made that was not clear. In contrast as it relates to Melancon, he just concluded he was a compelling communicator without assigning to him any particular communication that was clearly made to his subordinates that was compelling in nature.

USPS points out however that Tate has hired numerous black women for promotion, showing that gender was not a factor in his hiring decisions. In so doing, Tate points to fifteen (15) instances where he hired a woman for the position of Postmaster. Notably these decisions occurred from September 2018 to July 17, 2021, after the hiring decision at issue in this case which occurred in August 2017. This hiring decision involved a promotion to the MPOO position, a position with more responsibility than a postmaster position and none of the hiring decisions relied upon by the USPS involved the promotion of a woman to the MPOO position by Tate. *See* Rec. Doc. 30-2. Therefore, a jury may find that Vallery's gender was a but-for cause in Tate's decision not to hire her.

There is also a material question regarding whether Hardin's strategic move of placing Melancon in the non-competitive MPOO position, then supplanting Tate, as the interviewer, suggests that race was a motivating factor in the hiring decision. It is undisputed that Hardin was listed as the hiring official. Tate however conducted the interview and made the hiring decision.

Accardo, who was detailed to his position by Hardin, was ascribed a racially based statement some six years earlier by Piazza, Vallery's supervisor. Accardo denies having made the statement and USPS contends that the Court should not consider the statement. The USPS suggests that the statement is unreliable because it occurred six years earlier and was made by Plaintiff's husband, Nicholas Piazza. This however is a credibility determination which is forbidden upon

summary judgment and viewing this evidence in the light most favorable to the party opposing the motion indicates that both race and/or gender could have been a factor. *See Reeves* 530 U.S. 133.

Also, Hardin previously ignored Vallery's request to noncompetitive placement in June 2017 and August 2017 and in both instances a white male was originally detailed and then hired for the position. A jury may find that Vallery's race and gender were but-for causes in the decision.

Accordingly,

## IV.  CONCLUSION

**IT IS ORDERED ADJUDGED AND DECREED** that **Motion for Summary Judgment** filed by Louis DeJoy (Rec. Doc. 23) is **DENIED**.

New Orleans, Louisiana, this 1st day of December, 2021.

_____
KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE